```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PHENROY DAY,                                                 :

                        Petitioner,                          :

            -against-                                        :  REPORT AND RECOMMENDATION

                                                             :     09 Civ. 10279 (GBD)(KNF)
ROBERT E. ERCOLE, Superintendent of Green
Haven Correctional Facility,                                 :

                                                             :

                        Respondent.
------------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE GEORGE B. DANIELS, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Pro se petitioner Phenroy Day ("Day") filed an application for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for third-degree criminal possession of a weapon, fourth-degree criminal possession of a weapon and third-degree criminal sale of a firearm. Day asserts his confinement is unlawful because of violations of his: (1) due process right to a fair trial, based on the trial court's refusal to instruct the jury on his entrapment defense, "when the evidence illustrated he was not selling guns;" and (2) Eighth and Fourteenth Amendment rights, occasioned by the court's imposition of consecutive instead of concurrent sentences, for "a continuous offense and [on]going fraudulent scheme." The respondent opposes the petition.

1

## BACKGROUND

In April 2001, after obtaining information that individuals were selling guns in Bronx County, New York, an undercover officer met Shawn Peetaway ("Peetaway") through a confidential informant. At that meeting, Peetaway sold the undercover officer three guns. They exchanged phone numbers and agreed to do business in the future. On April 8, 2001, Day and Peetaway met the undercover officer in Bronx County and sold him five guns. Thereafter, on nineteen additional occasions, Day and Peetaway sold ninety-nine guns to the undercover officer in Bronx County. Together, Day and Peetaway sold 104 guns to the undercover officer, for $81,000. During almost every transaction, Day and Peetaway asked the undercover officer if he could help them purchase drugs. The undercover officer told Day and Peetaway that he had a drug connection, who, after killing someone, was "laying low" in Jamaica. He offered to put them in contact with his drug connection when that person returned to New York. After completing the last weapon sale transaction, on August 28, 2001, the undercover officer drove Day and Peetaway to meet, supposedly, his drug connection; instead, they were arrested.

After his arrest, Day waived his constitutional rights and wrote a statement admitting he drove with Peetaway from Virginia to sell guns to the undercover officer, on August 28, 2001, and he mentioned three individuals who purchased guns for him in Virginia. A Bronx County grand jury charged Day with: (a) fifty-six counts of third-degree criminal possession of a weapon; (b) fifty-one counts of fourth-degree criminal possession of a weapon; (c) 100 counts of third-degree criminal sale of a firearm; (d) one count of attempted third-degree criminal sale of a firearm; (e) twenty-one counts of manufacturing, transporting, disposing and defacing weapons; and (f) five counts of endangering the welfare of a child.

Day testified at his trial that he and Peetaway sold weapons to the undercover officer.

However, he claimed that he intended to purchase marijuana from the undercover officer, who promised to supply it, if Day could find somebody who could sell guns to him.  Day testified that the undercover officer threatened him, by telling him that the person who would provide marijuana was hiding, after committing a murder, but that the threat did not scare him.  Day admitted that certain individuals purchased weapons for him in Virginia, which, on various dates, he later sold to the undercover officer.

      For the crimes that occurred on April 8, April 17, April 21, April 29, May 5, May 18, May 26, June 8, June 16, July 5, August 2 and August 28, 2001, Day was convicted for: (1) ten counts of third-degree criminal possession of a weapon;  (2) two counts of fourth-degree criminal possession of a weapon; and (3) twelve counts of third-degree criminal sale of a firearm.  He was sentenced to: (a) seven years imprisonment and three years post-release supervision for each count of third-degree criminal possession of a weapon; (b) one year imprisonment for each count of fourth-degree criminal possession of a weapon; and (c) two and one-third to seven years imprisonment for each count of third-degree criminal sale of a weapon. The sentences imposed for crimes committed on the same day run concurrently with each other, but the sentences imposed for the crimes committed on each of the twelve days "run consecutive to each other for a total [sentence] of 72 and [two-thirds] minimum to 84 years" imprisonment.

      On direct appeal, Day argued, through his attorney, that: (a) he received ineffective assistance from his trial counsel, when counsel allowed Day to testify, on cross-examination, to participating in the transactions that occurred on the twelve dates noted above; and (b) his sentence should be reduced, in the interest of justice, by having all his sentences for offenses occurring on the twelve dates run concurrently with each other, instead of consecutively.  Acting pro se, Day filed a supplemental brief arguing: (1) he was denied his right to a fair trial when the

court refused to instruct the jury on his entrapment defense, "when the evidence illustrated he was not selling guns;" and (2) his sentence violates his Eighth and Fourteenth Amendment rights; "all sentences should [run] concurrently when they were part of a continuous offense, and ongoing fraudulent scheme."

      The New York State Supreme Court, Appellate Division, First Department, found that Day "received effective assistance of counsel under the state and federal standards," because the record demonstrated "that defense counsel, in consultation with his client, carefully reviewed the available strategic options, which were very limited in the face of the overwhelming evidence of defendant's extensive trafficking in firearms. There is no indication that a different strategy would have had any hope of success." People v. Day, 51 A.D.3d 584, 585, 860 N.Y.S.2d 501, 501-02 (App. Div. 1st Dep't 2008). The Appellate Division also concluded that no basis existed "for reducing the sentence, which, we note, is deemed by operation of law to be a sentence of 20 years." Id., 860 N.Y.S.2d at 502 (citing New York Penal Law ("PL") § 70.30(1)(e)(ii)(A)). It found Day's pro se arguments to be "without merit." Id. The New York Court of Appeals denied Day's request for leave to appeal. See People v. Day, 11 N.Y.3d 831, 868 N.Y.S.2d 606 (2008).

      In his petition for the writ, Day argues that his testimony – which was unrebutted by the prosecution's witnesses – that: (i) the undercover officer "persistently called him about guns, and wired him money to facilitate the deal;" and (ii) "[a]fter declining to pursue the deal, he informed the undercover on the phone, he was not dealing with him," but the undercover officer "persistently called him, trying to convince him to take off from school, rent a car, bring some girls, and come to New York because he had drugs waiting for him," entitled him to a jury instruction on the defense of entrapment. According to Day, the prosecution "conceded [that

Day] laid the proper foundation for the instruction to be submitted to the jury" and "did not respond to the merits of the supplemental brief after conceding during the state court proceedings, an entrapment defense was warranted." Day contends that because: (a) he testified that he "was actively induced by the undercover to purchase guns for him and promised in exchange, illegal controlled substances, if he could deliver, . . . the entrapment defense should have been submitted to the jury for their consideration;" (b) the jury "asked the state court, the amount of times when the undercover requested [Day] to bring him guns;" and (c) "any issues concerning the veracity of [Day's] affirmative defense should have been resolved by the jury," the Appellate Division applied Cupp v. Naughten, 414 U.S. 141, 94 S. Ct. 396 (1973) unreasonably.[1]

Day also argues that the Appellate Division applied Solem v. Helm, 463 U.S. 277, 103 S. Ct. 3001 (1983), unreasonably, because "his sentence was grossly disproportionate, constituting cruel and unusual punishment." He contends, "the imposition of consecutive sentences was impermissible when the offense was part of [a] continuous and fraudulent scheme." Since the

---

[1] Cupp is not the clearly established law governing Day's claim that he was deprived of a fair trial, when the trial court refused to instruct the jury on entrapment. In Cupp, the Supreme Court considered the issue of whether the jury instruction that every witness, presumably, speaks the truth, given "in a state criminal trial so offended established notions of due process as to deprive the [defendant] of a constitutionally fair trial." Id. at 144, 94 S. Ct. at 399. The Supreme Court held that a jury instruction, which includes: (a) full and explicit instructions on the presumption of truthfulness; (b) factors for the jury to consider in assessing each witness' possible motivation to testifying falsely; and (c) the state's burden of proving a criminal defendant's guilt beyond reasonable doubt, does not "render the [defendant's] conviction constitutionally invalid." Id. at 149-50, 94 S. Ct. at 401-02. Instead, Day's claim concerning the failure to give an entrapment instruction is governed by Mathews v. United States, 485 U.S. 58, 108 S. Ct. 883 (1988), in which the Supreme Court considered "under what circumstances a defendant is entitled to an entrapment instruction," id. at 62, 108 S. Ct. at 886, and a long line of cases involving entrapment, starting with Sorrells v. United States, 287 U.S. 435, 53 S. Ct. 210 (1932).

prosecution "contended [at trial that Day] had a single intent to sell illegal firearms which was carried out in successive stages," it "failed to demonstrate the legality of consecutive sentences." Additionally, Day argues, the state court ignored various factors in imposing the sentence, including: (1) that "he was not offered a plea;" (2) that he was twenty-six years old at the time of the offense and was "in college and about to graduate;" (3) "his lack of any prior convictions;" (4) "his rehabilitation;" and (5) that Peetaway, "received the same sentence as [Day] after the modification of the sentence was made."

The respondent contends "there was no reasonable view of the evidence that supported the elements of an entrapment defense, and, therefore, the trial court properly did not issue a jury instruction on entrapment." Day testified that "he sold the guns to the undercover officer on numerous dates," and "[w]hile he claimed that a confidential informant originally induced him and co-defendant Peetaway to sell guns to the undercover, [Day] admitted at trial that he agreed to sell guns in exchange for marijuana." By Day's "own admission, it was his desire for marijuana that motivated him to sell guns, not the actions of the confidential informant or the undercover officer." Therefore, the respondent concludes, "the trial court properly refused to charge the jury on the entrapment defense, because the evidence demonstrated that petitioner was clearly predisposed to commit the crimes."

The respondent also argues that Day's Eighth and Fourteenth Amendment claims, concerning the imposition of consecutive sentences, must be denied because the Appellate Division's determination on those issues was neither contrary to, nor an unreasonable application of United States Supreme Court precedent. The respondent maintains that, because New York law prohibits consecutive sentences only when one act constitutes two offenses, and "the evidence at trial established that each transaction was a separate and distinct act," the court was

permitted to impose consecutive sentences for crimes committed on separate days.

## DISCUSSION

*Legal Standard*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)] only when it is embodied in a holding of [the Supreme] Court." Thaler v. Haynes, __ U.S. __, 130 S. Ct. 1171, 1173 (2010); see Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., concurring) (clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."). A state-court decision is contrary to clearly established Supreme Court precedent if its conclusion on a question of law is "opposite to that reached by [the Supreme] Court," or if the state court reaches a conclusion different from that of the Supreme Court "on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S. Ct. at 1523. A state-court decision involves an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new

7

context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407, 120 S. Ct. at 1520.  To prevail under the unreasonable application clause, it is not sufficient to show that the state-court decision is "incorrect or erroneous," the state court's application of the Supreme Court precedent "must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166, 1175 (2003).

"On a petition for a writ of federal habeas corpus, the petitioner bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).  "A state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." Bierenbaum v. Graham, 607 F.3d 36, 48 (2d Cir. 2010) (citing 28 U.S.C. § 2254(e)(1)).  A state court adjudicates a constitutional claim on the merits when it: (a) disposes of the claim on substantive grounds; and (b) "reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).  No articulation of the state court's reasoning for disposing of the claim is required, as long as a substantive ground is a basis for the disposition.  See id.

AEDPA requires a petitioner to exhaust all remedies available in the state courts.  See 28 U.S.C. § 2254(b)(1)(A).  This means that "a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition." Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991).  When a claim has not been presented to a state court for adjudication, a federal court reviewing a habeas corpus petition may deem the claim exhausted "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001).  New York law provides that a state court must deny a motion to vacate a judgment when, although sufficient facts appear on the record to permit adequate

review of the issue raised upon the motion, a defendant failed unjustifiably to raise that issue on appeal. See New York Criminal Procedure Law ("CPL") § 440.10 (2)(c).

A procedural default may be excused by a federal court if a habeas corpus petitioner can show cause for the default and prejudice resulting from it, or that the court's failure to consider the federal claim(s) will result in a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). To establish cause for a procedural default, a petitioner must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645 (1986). A procedurally defaulted claim may also be entertained by a federal court when a petitioner can show that the court's failure to review his claim will result in a fundamental miscarriage of justice, because he is actually innocent. See Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 1611 (1998).

*(1) Entrapment Instruction*

New York law provides:

> In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for purpose of criminal prosecution, and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. Inducement or encouragement to commit an offense means active inducement or encouragement. Conduct merely affording an opportunity to commit an offense does not constitute entrapment.

PL § 40.05.

"When a defense declared by statute to be an 'affirmative defense' is raised at trial, the defendant has the burden of establishing such defense by a preponderance of the evidence." PL § 25.00 (2); see People v. Laietta, 30 N.Y.2d 68, 75-76, 330 N.Y.S.2d 351, 357 (1972)

9

(placing the burden of establishing the elements of the statutory affirmative defense of entrapment on the defendant does not violate due process because "entrapment is not a defense which negatives an essential element of the crime, but rather constitutes a defense in the nature of confession and avoidance.").[2]

Whether the requirements of the defense have been met is a question of fact for the jury to decide.  See Mathews, 485 U.S. at 63, 108 S. Ct. at 886; People v. McGee, 49 N.Y.2d 48, 61, 424 N.Y.S.2d 157, 164 (1979).  The Supreme Court has held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment."  Mathews, 485 U.S. at 62, 108 S. Ct. at 886; see People v. Butts, 72 N.Y.2d 746, 749, 536 N.Y.S.2d 730, 733 (1988) (the standard, announced by the Supreme Court in Mathews, which is "based upon Federal common law, is the same as that which has been consistently applied by this court.").  "The rule is that the jury must be instructed on all claimed defenses which are supported by a *reasonable view* of the evidence–not by any view of the evidence, however artificial or irrational."  Id., at 750, 536 N.Y.S.2d at 733.  "When determining whether to give a charge on a claimed defense, the trial court must view the evidence in the light most favorable to the defendant."  Id.[3]

---

[2] Under federal common law, "[t]o make out a defense of entrapment, 'a defendant must first prove government inducement by a preponderance of the evidence.  The burden then shifts to the government to show that the defendant was predisposed to commit the crime beyond a reasonable doubt.'" United States v. Al-Moayad, 545 F.3d 139, 153 (2d Cir. 2008) (citation omitted);

[3] Under the federal standard, a defendant's claim "that he was entrapped as a matter of law–is in substance an attack on the sufficiency of the government's evidence of predisposition," and "that evidence must be viewed in the light most favorable to the government, and all reasonable inferences must be drawn in the government's favor." United States v. Salerno, 66 F.3d 544, 547 (2d Cir. 1995).

"Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." Jacobson v. United States, 503 U.S. 540, 548, 112 S. Ct. 1535, 1540 (1992). Inducement "includes soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged," in other words, setting "the accused in motion." United States v. Sherman, 200 F.2d 880, 883 (2d Cir. 1952). "A defendant is predisposed to commit a crime if he is ready and willing without persuasion to commit the crime charged and awaiting any propitious opportunity to do so." Salerno, 66 F.3d at 547 (citation and internal quotation marks omitted). Predisposition may be demonstrated by evidence of:

> (1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement.
>
> Id. (citation omitted).

Day testified at his trial that he met the undercover officer for the first time on April 8, 2001, when he and Peetaway drove from Virginia to Bronx County, and sold guns to him that day. He stated that he had "intentions on buying some drugs from [the undercover officer]" and he "was prepared to purchase some [marijuana] from him." Day testified that the undercover told him, during their first meeting, that he could supply the marijuana if Day could "find somebody who had guns to sell or bring people who had guns to sell, bring them to him, and he will make sure he take care of me on the drug end of the deal." According to Day, he "was just trying to get drugs out of the deal." Day did not testify that he was unaware, when he drove with Peetaway from Virginia to Bronx County to meet the undercover officer, that Peetaway had weapons in the car or that the purpose of the trip was not to sell weapons to the undercover

officer. Day did not testify that, even assuming he was ignorant of the nature of the April 8, 2010 transaction, once he learned that the weapons sale was at hand, he distanced himself from the transaction. On the contrary, Day testified that he traveled voluntarily from Virginia to Bronx County with Peetaway, where he and Peetaway sold weapons to the undercover officer. The undercover officer simply offered Day an opportunity to sell weapons in the future, in exchange for a promise to procure marijuana, and Day "promptly availed himself of this criminal opportunity." See Jacobson, 503 U.S. at 550, 112 S. Ct. at 1541. It was Day's conduct, of driving from Virginia to Bronx County with Peetaway and selling the weapons to the undercover officer, on April 8, 2001, that set in motion the sequence of events which led to Day's sale of weapons to the undercover officer on subsequent dates. Day's participation in arranging and selling weapons to the undercover officer was voluntary and continuous. Day's willingness to sell the weapons, from the first encounter with the undercover officer, evidences his predisposition to commit the crimes charged, not the lack of it. That "there [came] a time when [Day] effectively [was] getting fed up with [his transactions with the undercover officer] and tried to get out," and that he "told [the undercover officer that the undercover officer] is not owning up to his end [of] the deal, and it's stressful," is not sufficient evidence from which a reasonable jury could find inducement and a lack of predisposition, on Day's part, to commit the crimes charged.

      The record, viewed in the light most favorable to Day, demonstrates that he did not adduce sufficient evidence at trial, from which a reasonable jury could find entrapment. Thus, the Appellate Division did not apply clearly established federal law unreasonably when it found no error in the trial court's refusal to instruct the jury on entrapment. Accordingly, no basis exists to grant Day's habeas corpus petition on his entrapment instruction claim.

*(2) Consecutive Sentences*

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. Amend. VIII. "No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

New York law provides that "when multiple sentences of imprisonment are imposed on a person at the same time, . . . the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other . . . in such a manner as the court directs at the time of sentence." PL § 70.25(1).

> When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently.
>
> PL § 70.25(2).
>
> Where the aggregate maximum term of two or more consecutive sentences, one or more of which is a determinate sentence and one or more of which is an indeterminate sentence, imposed for two or more crimes, other than two or more crimes that include a class A felony, committed prior to the time the person was imprisoned under any of such sentences, exceeds twenty years, and none of the sentences was imposed for a class B felony, the following rules shall apply: (A) if the aggregate maximum term of the determinate sentence or sentences exceeds twenty years, the defendant shall be deemed to be serving to [sic] a determinate sentence of twenty years.
>
> PL § 70.30(1)(e)(ii).

Here, Day received consecutive sentences for the crimes he committed on twelve different days in 2001. On each of the twelve days, he committed third-degree criminal sale of a firearm and criminal possession of a weapon as follows: (a) on ten of the twelve days he committed third-degree criminal possession of a weapon; and (b) on two of the twelve days he

committed fourth-degree criminal possession of a weapon.  Day testified that he transported weapons from Virginia and sold them in Bronx County on twelve different days.  As the crimes committed on each of the twelve days represented separate transactions involving separate acts on each day, and the act committed on one day was not a material element of the offenses committed on any other day, see PL § 70.25(2), the trial court was authorized to impose consecutive sentences, pursuant to PL § 70.25(1).  Inasmuch as the aggregate term of Day's sentences was from seventy-two and two-thirds to eighty-four years imprisonment, Day is deemed properly to be serving twenty years, as provided by PL § 70.30(1)(e)(ii)(A). Accordingly, no federal constitutional issue is presented here because Day's sentence is within the range prescribed by state law.  See White, 969 F.2d at 1383.

Day's claim, that the trial court ignored, during the sentencing proceeding, (I) his age and social history, (ii) his lack of prior convictions, and (iii) his rehabilitation, was rejected by the Appellate Division on the merits.  Day's assertion, that "the state court determination resulted in an unreasonable application of Solem," without more, is not sufficient to sustain his burden of showing that his constitutional rights have been violated.  See Jones, 126 F.3d at 415.

Day's claim that the trial court ignored, during the sentencing proceeding, that "he was not offered a plea" and that Peetaway "received the same sentence as he did after the modification of the sentence was made," was not presented to the state court for adjudication.  As such, that claim is procedurally barred, see CPL § 440.10(2)(c), and can be deemed exhausted for the purpose of habeas corpus review.  See Aparicio, 269 F.3d at 90.  Day failed to show cause for his procedural default and prejudice resulting from it, or that he is actually innocent.  As a consequence, Day's claim, that the state court failed to consider, during the sentencing proceeding, that he was not offered a plea and that Peetaway received the same

14

sentence as he, cannot be reviewed by the court.

## RECOMMENDATION

For the foregoing reasons, I recommend that the petition be denied.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 630, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
       November 17, 2010

Respectfully submitted:

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Phenroy Day
Kayonia Latisha Whetstone, Esq.

15